No. 20,379.

THE FIRST NATIONAL BANK OF GARDEN CITY, *Appellee*, v.
E. S. STROUP, *Appellant*.

SYLLABUS BY THE COURT.

1. PROMISSORY NOTE — *General Verdict — Special Findings — Judgment.*
   Judgment may not be rendered contrary to the general verdict sus-
   taining several defenses to an action, on special findings of fact, un-
   less the special findings defeat each defense.

2. SAME. Special findings of fact considered, and held to be in harmony
   with the general verdict.

Appeal from Saline district court; DALLAS GROVER, judge.
Opinion filed March 10, 1917. Reversed.

*John O. Wilson, J. H. Wilson,* and *Z. C. Millikin,* all of
Salina, for the appellant.

*T. L. Bond,* of Salina, *William Easton Hutchison,* and *C. E.
Vance,* both of Garden City, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one to recover on a promissory
note. The defenses were that the note was procured by
fraudulent representations, was without consideration, and
was given for accommodation. With a verdict for the defend-
ant, the jury returned special findings of fact on which the
court rendered judgment for the plaintiff. The defendant
appeals, and assigns as error the rendering of judgment on
the findings of fact.

On April 16, 1909, the defendant gave his negotiable promis-
sory note to the Kansas Railway Construction Company for
$5200, payable on October 15, 1909. In due course this note
came into the hands of the Central National Bank of Topeka,
and at maturity was sent to the plaintiff for collection. It
bore the indorsement, "Demand and notice of protest waived,"
signed by the construction company. The defendant gave the
plaintiff a note for $5200, dated October 15, 1909, and maturing
on January 15, 1910. The old note was marked, "Paid by new
note to 1st Nat'l Bank," and surrendered. The second note

2—100 KAN.

was renewed from time to time, and the note sued on, dated October 15, 1913, was the last of the series of renewals.

The answer alleged that the note maturing October 15, 1909, was given at the instance of the plaintiff, without consideration, and because of the following representations:

"That said construction company was then and there engaged in the construction of a certain railway, and then had on deposit with said plaintiff bank certain funds and securities out of which it would receive, upon the completion of a short section of said railway, funds sufficient to meet all its obligations, including the said promissory note; that said railway construction company was solvent and had sufficient assets to meet all of its obligations, and that the signing of said promissory note by this defendant was only intended to enable said plaintiff to advance sums of money at interest to said construction company until the completion of said portions of said line of railway."

The note dated October 15, 1909, was given without consideration moving from the plaintiff to the defendant, and was intended as an extension of time on the construction company note. It was procured by representations as follows:

"That it was necessary, expedient and advantageous to plaintiff that the note given to said construction company and indorsed to plaintiff should be renewed by defendant and given to plaintiff directly in plaintiff's own name; but that nevertheless said construction company was still solvent and would pay the said note upon the completion of the afore-mentioned section of railway and the realization upon its securities on deposit with said bank, the plaintiff herein; and that at all events plaintiff would hold and save this defendant harmless at all times upon the note then to be given."

Each subsequent renewal, including the note sued on, was given under like circumstances, and the representations relating to the deposit of funds and securities of the construction company, its solvency, and its assets, were false.

The reply, besides containing a general denial, stated that the note maturing October 15, 1909, was given by the defendant for bonds of the railway company; that the defendant knew all about the business and finances of the construction company; that when the note came to the plaintiff from the Central National Bank the defendant applied to the plaintiff for a loan of money to take it up; that the plaintiff loaned the defendant $5200 to take it up; that the note given on October 15, 1909, was given for this loan, and that the note sued on was a renewal of such note.

Bank v. Stroup.

By instruction number three the court advised the jury that if the note dated October 15, 1909, was intended as an extension of time on the note to the construction company, and the representations alleged to have been made were made and relied on, and were false, the verdict must be for the defendant. Instructions numbered four and five read as follows:

"4. If you find that defendant signed and delivered his note for $5200 to the Kansas Railway Construction Company as an accommodation note to said company for its use in obtaining funds or credit, and that plaintiff knew that fact, and that on or about the maturity of said note the plaintiff decided to arrange to carry the indebtedness represented by said note for said railway construction company and thereby to aid said company in the prosecution of its business, and proposed to defendant that if he would give his new note to said bank for the same sum as an accommodation note to the bank to better enable said bank to carry such indebtedness for the railway company, then your verdict should be for the defendant.

"5. The jury are instructed that an accommodation note is a note given not for value received, but as an accommodation or favor in the course of business to the party to whom it was given."

The jury were advised in instructions numbered eight and nine that if the plaintiff loaned the defendant the amount necessary to pay the note maturing on October 15, 1909, held by the Central National Bank, the loan would be a sufficient consideration for the note given October 15, 1909, and the verdict should be for the plaintiff.

The jury returned the following special findings of fact:

"1. Did the Central National Bank of Topeka, Kansas, purchase from the railroad company the note given said company by defendant? Ans. Yes.

"2. Did the Central National Bank of Topeka, Kansas, send said note to the plaintiff bank for collection? Ans. Yes.

"3. Did the plaintiff advance the money to pay said note? Ans. Yes.

"4. If you answer the preceding question in the affirmative, then did defendant execute and deliver to plaintiff his note for the money so advanced? Ans. By accommodation note as per instruction five.

"5. When the defendant signed the note sued on in this action, did he have knowledge that the railway construction company was financially irresponsible? Ans. No.

"6. If you answer the preceding question in the negative, then could the defendant, prior to the signing of the note sued on, with ordinary diligence learn the financial condition of the railway construction company? Ans. No."

The instructions to the jury and the findings of fact are accepted as correct by both parties.

The general verdict found all the elements of every issue submitted to the jury in favor of the defendant, except so far as irreconcilable facts were stated in special findings. In determining the question whether or not the general verdict is controlled by special findings, all doubts as to the meaning of any finding are to be resolved in favor of consistency in the jury's work. Special findings must be interpreted to harmonize with the general verdict if it be possible to do so. Should special findings be opposed to a general verdict which sustains several defenses, judgment contrary to the verdict can not be rendered unless the fact or facts found specially defeat each defense.

In this case there were two defenses pleaded, fraud, and accommodation of the plaintiff without consideration. Either defense was sufficient to defeat liability, and each one was submitted to the jury separately from the other. Under instruction number three it made no difference whether or not the note was given for the advantage of the plaintiff in financing the railway company, and no difference whether or not, in a legal sense, the defendant received some consideration by having his liability to the Topeka bank discharged by the plaintiff's advancement of money to take up the note which that bank held. If as a matter of fact the note given on October 15, 1909, was intended as an extension of time on the note maturing on that day, was procured by false statements concerning the construction company's finances, etc., and the successive renewals were procured by repetitions of those statements, the defendant was not liable. This defense was not impaired by the special findings. Findings numbered five and six relate to the defense of fraud, but they are in favor of the defendant. The other findings relate to the subject of accommodation paper and value received. There is no inconsistency between them and the finding of fraud contained in the general verdict, and judgment should have been rendered on the general verdict, instead of on the special findings.

The plaintiff has little to say in its brief concerning the defense of fraud. In discussing the character of the issues, the plaintiff takes the position that while fraud and misrepre-

sentation were pleaded, the answer contained no allegation that either the note maturing on October 15, 1909, or the note dated that day was an accommodation note. The district court properly interpreted the answer otherwise, and submitted the issue of accommodation paper to the jury. The plaintiff then proceeds to say that the defense of accommodation paper and the defense of fraudulent representations are very dissimilar, and proof of one can not be made under allegations of the other. This is true. In one case there is no liability because the note was given as a favor and not for value received, while in the other case there is no liability because, whatever the character of the paper, it was wrongfully obtained. The plaintiff concludes its discussion of the subject of fraud with the following:

"Renewal of a note waives fraud. . . . We maintain that there was no fraud whatever in this case, but if' the imagination of any one should be so great as to perceive there might have been in the first instance, no one can conceive of it recurring by the making of false statements every ninety days during a period of four years to an active business man living and doing business in the same small town where the railroad was to have been built, and where the bank was doing business. We do not take issue with appellant on the question that the instructions of the court are the law of the case by which the jury is to be governed, even if they should be erroneous, and there is no suggestion here of their being erroneous."

Successive renewals of a note procured by fraud do not waive the fraud if the fraud also be renewed each time. That was the charge made in the answer. There must have been sufficient evidence to support the charge, or the very clear and definite instruction on the subject of fraud would not have been given. In any event, the instruction was given and is not complained of. So far as the jury were interrogated specially with reference to the subject of fraud, they found for the defendant. The general verdict found everything else submitted by the instruction in favor of the defendant. The court could not render judgment against a verdict sustaining the defense of fraud merely because a different defense, supported by different evidence, the defense of accommodation paper, was negatived by special findings.

There can be no doubt that the jury intended to sustain the defense of accommodation paper, both by the general verdict

and by the special findings. The defendant's theory of the character of the paper was clearly presented in the fourth instruction, the term "accommodation note" used in the instruction being elucidated by the fifth instruction. The reply to this theory was that the defendant applied to the plaintiff for a loan of money, received a loan of money, and gave the note dated October 15, 1909, for a loan of money, to take up the note maturing on that day. This reply was presented in the eighth and ninth instructions, and the jury were told that if they found the facts accordingly, the verdict should be for the plaintiff. The general verdict found the facts against the reply, and in favor of the defendant. Strangely enough, the language of the reply and the language of instructions eight and nine was abandoned in framing the special interrogatories, and the jury were not asked anything about a loan of money from the plaintiff to the defendant. They were not even asked if the money referred to in the third and fourth interrogatories as "advanced" was advanced to the defendant or for the defendant. The note to the construction company was a pure lending of credit. When it reached the hands of an innocent purchaser, of course the defendant was liable to the holder. But the note bore the indorsement of the construction company, and the construction company was also liable to the holder. The advancement of money by the plaintiff was not by way of a loan to the defendant to discharge his liability, but by way of carrying the indebtedness of the construction company, to aid it in the prosecution of its business. The new note, for the same sum as before, was given, not to secure a loan to the defendant, but to accommodate the plaintiff by better enabling it to carry the construction company's indebtedness.

The form of every question propounded to the jury permitted an answer of yes or no. Every question was answered by yes or no except the fourth. Consequently the jury refused to answer the question unqualifiedly in the affirmative, and framed its own answer according to its estimate of the facts. The answer, read in connection with those preceding it, was that the defendant executed and delivered to the plaintiff an accommodation note, as per instruction number five, for the money advanced by the plaintiff to pay the note purchased

by the Central National Bank and sent to the plaintiff for collection. The court told the jury in instruction number five that an accommodation note was a note given as an accommodation or favor in the course of business to the party to whom it was given. This was exactly the kind of note referred to in instruction number four, which presented the defendant's theory. But the court also stated in the fifth instruction that an accommodation note was one given "not for value received." The subject of value received was presented to the jury in instructions eight and nine, under the equivalent term, consideration. But the only kind of consideration mentioned there was consideration by virtue of a loan of money to the defendant of the amount necessary to pay the Topeka bank. Indirect release of the defendant's liability to the Topeka bank by means of the plaintiff taking up and carrying the construction company's indebtedness for the construction company was not presented to the jury as a form of consideration or value received. While a lawyer might know about it, that kind of value received was not in the jury's mind, and there was no reason why it should be. In this aspect of the case, which is the only one left open to discussion, in view of the instructions, the note given on October 15, 1909, was given without consideration, as a favor to the plaintiff, and was an accommodation note. This conclusion, necessitated by the character of the instructions, is not decisive of the case as a matter of law, but is important as a perfectly natural and legitimate deduction bearing on the proper interpretation of the finding.

The term "value received" as used in the fifth instruction, and imported into the finding by reference to the instruction, might have had one of two meanings. First, consideration resulting from a loan to the defendant to pay the Topeka bank. Second, consideration resulting from discharge of the defendant's liability to the Topeka bank, consequent upon the plaintiff's decision to take care of the construction company's indebtedness. Value received, or consideration, was not defined or explained to the jury, except in accordance with the plaintiff's theory of the case—a loan of money made by the plaintiff to the defendant to take up his obligation to the Topeka bank. There was no loan to him for such purpose. The

plaintiff neither loaned nor advanced any money to him on the security of his note. The plaintiff knew the indebtedness represented by the note held by the Topeka bank was in fact the indebtedness of the construction company, and that the defendant was merely an accommodation maker. The plaintiff undertook to finance the construction company, not the defendant. When it decided to carry the indebtedness for the construction company, it took the defendant's note, not because in financing the construction company it incidentally procured his release from liability to the Topeka bank, but to better enable it to assist the construction company. If the jury understood "not for value received" to mean "not for a loan of money," the answer to question number four is in harmony with the general verdict. If this were not the most natural and obvious meaning, considering the pleadings and the instructions, it would be chosen to make the answer conform to the general verdict.

The judgment of the district court is reversed, and the cause is remanded with direction to enter judgment for the defendant on the general verdict.